UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KATHRYN DALE,

               Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

               Defendant.

CASE NO. 2:16-CV-00910-RSL-DWC

REPORT AND RECOMMENDATION
ON PLAINTIFF'S COMPLAINT

Noting Date: January 20, 2017

      The District Court has referred this action, filed pursuant to 42 U.S.C. § 405(g), to United States Magistrate Judge David W. Christel. Plaintiff seeks judicial review of the denial of Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits.

      The Court concludes the Administrative Law Judge ("ALJ") erred by failing to follow the law of the case. Therefore, the undersigned recommends the entry of an Order reversing the ALJ's decision, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings.

1

## PROCEDURAL & FACTUAL HISTORY

2      On October 6, 2010, Plaintiff filed an application for SSI, and on November 22, 2010,

3  Plaintiff filed an application for DIB. *See* Dkt. 9, Administrative Record ("AR") 195-211.[1]

4  Plaintiff alleges she became disabled on April 7, 2005, due to spondylolisthesis, degenerative

5  disc disease, ADHD, bipolar disorder, and depression. *See* AR 195, 222.  Plaintiff's applications

6  were denied upon initial administrative review and on reconsideration. *See* AR 278-305, 322-

7  355. A hearing was held before ALJ Ruperta Alexis on March 12, 2012, at which Plaintiff,

8  represented by counsel, appeared and testified. *See* AR 876.

9      On May 11, 2012, ALJ Alexis found Plaintiff was not disabled within the meaning of

10  Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. AR 986. Plaintiff's request

11  for review of the ALJ's decision was denied by the Appeals Council on May 24, 2013, making

12  that decision the final decision of the Commissioner of Social Security (the "Commissioner").

13  *See* AR 1, 20 C.F.R. § 404.981, § 416.1481. Plaintiff filed a complaint in this Court seeking

14  judicial review of the Commissioner's final decision, and on February 3, 2014, the Court

15  reversed and remanded ALJ Alexis' decision for further proceedings. AR 1004-13. *Dale v.*

16  *Colvin*, 2:13-cv-01224-RSL-BAT, Dkt. 21 (W.D. Wash. Feb. 3, 2014).

17      A different ALJ, Larry Kennedy, conducted a new hearing and issued a new decision,

18  again finding Plaintiff was not disabled within the meaning of Sections 216(i), 223(d), and

19  1614(a)(3)(A) of the Social Security Act. AR 812-13. The Appeals Council denied review, and

20

21

22  _____

23      [1] Plaintiff had also filed a prior application for DIB and SSI, which was denied by an ALJ
in a separate proceeding on August 25, 2009. AR 101. This Court affirmed the ALJ's denial of
the 2009 application, and Plaintiff did not appeal the decision to the U.S. Court of Appeals for

24  the Ninth Circuit. AR 877.

1    Plaintiff filed a second complaint in this Court on June 15, 2016, seeking judicial review of the

2    Commissioner's final decision.

3            Plaintiff argues the denial of benefits should be reversed and remanded for further

4    proceedings, because: 1) the ALJ violated the law of the case by finding Plaintiff could perform

5    light work without any additional limitations in her ability to stand and walk; and 2) erred in

6    evaluating the medical opinions of one examining physician and two other medical source

7    opinions. Dkt. 11, pp. 1-2.

8                                        **STANDARD OF REVIEW**

9            Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

10   security benefits only if the ALJ's findings are based on legal error or not supported by

11   substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

12   Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

13   more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

14   mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,

15   750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

16                                            **DISCUSSION**

17   I.      Whether the ALJ Violated the Law of the Case.

18           Plaintiff argues ALJ Kennedy violated the law of the case when he found Plaintiff has the

19   residual functional capacity ("RFC") to stand and/or walk up to six hours in an eight hour

20   workday, despite ALJ Alexis' previous finding that Plaintiff could only stand and/or walk for

21   two hours in an eight hour work day and would need to alternate between sitting and standing.

22           The law of the case doctrine applies in the Social Security context. *Stacy v. Colvin*, 825

23   F.3d 563, 567 (9th Cir. 2016). Under the law of the case doctrine, a court is precluded from

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 3

1   revisiting issues which have been decided—either explicitly or implicitly—in a previous

2   decision of the same court or a higher court. *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067

3   (9th Cir. 2012). As the Ninth Circuit explained in *Stacy*, the doctrine of the law of the case "is

4   concerned primarily with efficiency, and should not be applied when the evidence on remand is

5   substantially different, when the controlling law has changed, or when applying the doctrine

6   would be unjust." *Stacy*, 825 F.3d at 567.

7          In the first decision, ALJ Alexis determined Plaintiff had the RFC to stand and/or walk

8   up to two hours in an eight hour workday.  On appeal of ALJ Alexis' decision, Plaintiff only

9   challenged ALJ Alexis' evaluation of medical opinions pertaining to Plaintiff's mental health.

10  *See* AR 1004-13. Plaintiff did not challenge ALJ Alexis' determination Plaintiff could not stand

11  and/or walk for more than two hours in an eight hour workday. On appeal of ALJ Alexis'

12  decision, the Court determined ALJ Alexis erred in her evaluation of the mental health opinions

13  in the record, and instructed the ALJ to: "reassess the opinions of Dr. Eather and Ms. Paluga,

14  supplement the record and revise the RFC as necessary, and proceed with steps four and five."

15  AR 1010, 1013.

16         On remand, Plaintiff introduced new evidence pertaining to her physical limitations. This

17  evidence included updated treatment records from Plaintiff's physicians, as well as a new

18  opinion concerning Plaintiff's physical limitations from Dr. Paul Z. Seville, M.D. AR 1326-

19  1330. The evidence Plaintiff introduced during ALJ Kennedy's hearing was consistent with, or

20  more restrictive than, the physical limitations found by ALJ Alexis. *See* AR 1329. Nonetheless,

21  ALJ Kennedy found Plaintiff was able to stand and/or walk for up to six hours in an eight hour

22  workday, a less restrictive physical limitation than the standing and walking limitations found by

23  ALJ Alexis.  AR 807, 981. By not explaining the basis for the new finding or otherwise

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 4

1    articulating some justification for deviating from ALJ Alexis' prior determination, the ALJ

2    violated the law of the case. *See Stacy*, 825 F.3d at 567.

3         Defendant does not contest the fact the new evidence of Plaintiff's physical limitations is

4    consistent with or more restrictive than ALJ Alexis' previous RFC finding. Instead, Defendant

5    argues this Court has not previously ruled on ALJ Alexis' physical RFC findings, thus ALJ

6    Kennedy could not have violated the law of the case. Defendant also argues this Court's prior

7    remand order instructed the ALJ to "revise the RFC as necessary." Dkt. 12, p. 2 (citing AR

8    1010). These arguments misunderstand both the factual record and the law of the case doctrine.

9         The law of the case applies both to issues decided explicitly "or by necessary

10   implication" in a prior decision. *Hall*, 697 F.3d at 1067. Further, unless "the evidence on remand

11   is substantially different," the law of the case doctrine precludes revisiting prior rulings. *Stacy*,

12   825 F.3d at 567. In *Stacy*, for example, the Ninth Circuit observed an ALJ's prior Step Four

13   finding—though not explicitly ruled upon by the district court—is the type of determination that

14   is normally not reconsidered pursuant to the law of the case. *Id.* However, in *Stacy*, the Court

15   observed new evidence was introduced *for the first time* on remand which called the prior Step

16   Four findings into question. *Id.* at 567. Another court, citing *Stacy*, applied the law of the case

17   doctrine to preclude revisiting a finding by an ALJ in situations where the only new evidence

18   introduced on remand is consistent with the evidence before the ALJ in a prior hearing. *See*

19   *Thompson v. Colvin*, 2016 WL 7262005, at *5 (C.D. Cal. Dec. 14, 2016).

20        Here, the only new medical opinion discussed by ALJ Kennedy included *more* restrictive

21   limitations than those assessed by ALJ Alexis. *Compare* AR 977 (limiting Plaintiff to standing

22   and/or walking for a total of two hours in an eight-hour workday) *with* AR 1329 (limiting

23   Plaintiff to standing and/or walking for less than two hours in an eight-hour workday). Rather

24

1 than evaluating new medical opinion evidence on remand which called ALJ Alexis' finding into

2 question, the only medical evidence offered was consistent with ALJ Alexis' assessed RFC.

3 Absent some explanation from the ALJ as to why the new evidence warranted revising Plaintiff's

4 standing and/or walking limitations—in other words, explaining why it was "necessary" to revise

5 the RFC in a way adverse to Plaintiff—the ALJ violated the law of the case.

6    Further, this error is not harmless. Because ALJ Alexis previously found Plaintiff would

7 be unable to stand and/or walk more than two hours in an eight-hour workday, and would need to

8 repeatedly switch between sitting and standing, ALJ Alexis effectively found Plaintiff restricted

9 to less than the full range of light work. *See* 20 C.F.R. §§ 404.1567(b), 416.967. A limitation to

10 standing and/or walking for no more than two hours in an eight-hour work day would preclude

11 two of the three jobs the vocational expert identified at the most recent hearing, and would erode

12 the number of available positions for the third job by seventy percent. AR 855, 857. As the

13 alternative jobs proffered by the vocational expert were sedentary rather than light work, the

14 Medical Vocational Guidelines ("the Grids") may direct a finding of disability after her fiftieth

15 birthday if Plaintiff is limited to sedentary work.[2] 20 C.F.R. Part 404, Subpart P, Appendix 2, §§

16 201.09-201.16. Thus, the ALJ's failure to follow the law of the case was not "inconsequential to

17

18

19

20

21

22

23

24

---

[2] Plaintiff also argues the Court should find Plaintiff disabled as of her fiftieth birthday and remand the case with instructions to calculate benefits from that date. 20 C.F.R. Part 404, Subpart P, Appendix 2, §§ 201.09-201.16. However, the ALJ did not evaluate whether Plaintiff lacked transferable skills. *See* AR 811. As the Grids only dictate a finding of disability when a Plaintiff is over the age of fifty, limited to sedentary work, and does not possess transferable skills, the record lacks sufficient evidence to justify a finding of disability as a matter of law. Also, while the vocational expert found a limitation to two hours of standing and/or walking would significantly erode the number of light work jobs available, the ALJ did not determine whether such erosion would effectively mean there were no light work jobs available in significant numbers in the national economy. AR 811-12, 854-55.

1   the ultimate nondisability determination," and constitutes harmful error requiring remand. *See*

2   *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012).

3       II.       Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

4           Plaintiff also argues the ALJ erred in his evaluation of the medical opinion evidence in

5   the record. As the case should be remanded in any event, the Court need not address these

6   allegations in great detail. Nonetheless, Plaintiff's assignment of error warrants brief discussion

7   here with the intent of avoiding any unnecessary delay in the ultimate disposition of this matter.

8       **A.  Standard**

9           The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

10  opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d

11  821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v.*

12  *Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an

13  examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must

14  set forth specific, *legitimate* reasons that are supported by substantial evidence in the record."

15  *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The ALJ

16  can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting

17  clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157

18  F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must

19  explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*,

20  157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22). The ALJ "may not reject 'significant

21  probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)

22  (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642

23

24

1    F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for

2    disregarding [such] evidence." *Flores*, 49 F.3d at 571.

3          **B.  Application of Standard**

4            1. *Paul Z. Seville, M.D.*

5        Dr. Seville examined Plaintiff on August 31, 2013. AR 1326. On examination, Plaintiff

6    presented with positive straight leg raise tests and reduced lower extremity strength. AR 1328.

7    Dr. Seville also noted reduced range of motion in Plaintiff's neck, shoulder, left ankle, and back,

8    and noted Plaintiff was negative for Waddell's sign.[3] AR 1328. Dr. Seville diagnosed Plaintiff

9    with degenerative disc disease with a fair to poor prognosis. AR 1329. As a result of this

10   impairment, Dr. Seville opined Plaintiff would have a variety of physical limitations; for

11   example, Plaintiff would only be able to sit, stand and/or walk for less than two hours in an

12   eight-hour workday. AR 1329. Dr. Seville also limited Plaintiff to lifting 20 pounds occasionally

13   and 10 pounds frequently. AR 1329.

14       The ALJ agreed with Dr. Seville's conclusion Plaintiff could lift 20 pounds occasionally

15   and 10 pounds frequently, but otherwise gave Dr. Seville's opinion little weight for three

16   reasons:

17         [1 H]e cites to a reduced range of motion, positive leg raise testing, and lower
      extremity weakness as justifications for these limitations. Yet, no other source

18         noted a positive leg raise and strength testing by other sources, including Dr.
      Tredway, was full and equal. [2] Her purported need to move around was related

19         to her mental allegations, not physical. [3] Moreover, such restrictions are
      inconsistent with the claimant's activities, including daily walking.

20

21   ───────────────────

22       [3] "Physicians use Waddell tests to detect nonorganic sources, such as psychological
conditions or malingering, for lower back pain." *Reinertson v. Barnhart*, 127 Fed.Appx. 285, 289

23   (9th Cir. 2005) (citing Gordon Waddell et al., *Nonorganic Physical Signs in Low–Back Pain*, 5
Spine 117, 118 (Mar.-Apr.1980); see also 5 Attorneys' Textbook of Medicine ¶ 15A.83 (Roscoe

24   N. Gray and Louise J. Gordy eds., 3d ed. 2000)).

1    AR 807. Plaintiff argues these were not specific and legitimate reasons, supported by substantial

2    evidence, for discounting Dr. Seville's opinion. The Court disagrees.

3         An ALJ may properly discount a physician's opinion where it is inconsistent with the

4    longitudinal record. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (noting consistency with the

5    record as a whole is an important factor when an ALJ weighs a medical opinion). *Cf.*, *Chaudhry*

6    *v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (noting a physician's mistaken belief in the

7    existence of a significant medical fact was a specific and legitimate reason for discounting the

8    physician's opinion). Here, the ALJ properly noted Dr. Seville's positive findings on straight leg

9    raise testing were unrepeated in the record. Plaintiff argues this is not a specific and legitimate

10   reason for discounting an opinion, as straight leg raise findings can be "intermittent". *See* 20

11   C.F.R. Pt. 404, Subpt. P., App. 1, § 1.00D. However, Social Security Regulations indicate,

12   precisely because positive straight leg raise findings are intermittent, "their presence over a

13   period of time must be established by a record of ongoing management and evaluation[.]" *Id.*

14   Further, the ALJ properly noted other providers, such as Dr. Tredway, documented full strength

15   in Plaintiff's upper and lower extremities. AR 1318.[4] Plaintiff argues other providers

16   documented less than full strength on strength testing, and argues the ALJ failed to articulate a

17   reason to discount Dr. Seville's reduced range of motion findings. AR 453, 381, 653, 1690,

18   1740. However, the ALJ is responsible for resolving ambiguities and conflicts in the medical

19   evidence, and assessing whether inconsistencies in the evidence "are material (or are in fact

20   _____

21        [4] Plaintiff argues Dr. Tredway did not find Plaintiff had full strength in her lower
     extremities. However, Dr. Tredway opined, in the section of his opinion titled "motor
22   examination," that his examination "reveal[ed] 5/5 strength in the upper extremities, including
     the deltoids, biceps, triceps, wrist flexion, wrist extension, and grasp. Lower extremities
23   including iliopsoas, quadriceps, hamstrings, dorsiflexion, extensor hallucis longus, plantar
     flexion." AR 1318. At most, this passage is ambiguous, and the ALJ has sole authority to resolve
24   ambiguities in the medical evidence. *Reddick*, 157 F.3d at 722.

1    inconsistencies at all) and whether certain factors are relevant to discount [medical opinion

2    evidence] falls within this responsibility." *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595,

3    603 (9th Cir. 1999). As Dr. Seville offered Plaintiff's performance on straight leg raise testing,

4    and her lower extremity weakness, as part of the basis for his opinion Plaintiff would not be able

5    to stand and/or walk two hours in an eight-hour workday, the ALJ was entitled to cite evidence

6    in the record which undermined those conclusions.

7         However, the ALJ's other two reasons for discounting Dr. Seville's opinion were not

8    supported by substantial evidence. Dr. Seville's report clearly indicates he attributed a significant

9    amount of Plaintiff's need to change positions to degenerative disc disease and its associated

10   symptoms. AR 1329. Also, the walking activities the ALJ describes in his written decision (e.g.,

11   walking for 40 minutes per day) are not inconsistent with a limitation restricting Plaintiff to

12   walking for less than two hours in an eight hour workday. AR 803, 1329. To the extent the ALJ

13   intended to rely on other activities of daily living, the ALJ was required to cite evidence in the

14   record supporting his conclusions, and explaining why he, rather than the doctor, was correct.

15   *Reddick*, 157 F.3d at 725. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Because

16   the case must be remanded in any event, the ALJ should reevaluate Dr. Seville's opinion on

17   remand.

18              2. *Other Medical Source Evidence*

19         Plaintiff also argues the ALJ erred by failing to offer germane reasons for discounting the

20   opinions of two treating nurse practitioners.

21         Nurse practitioners and therapists are considered "other sources," rather than "acceptable

22   medical sources" under Social Security regulations. *See* 20 C.F.R. §§ 404.1513(d)(1) & (3).

23   Thus, the ALJ only needs to provide arguably germane reasons to reject their testimony. *Molina*,

24

1   674 F.3d at 1111; *Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1224 (9th Cir. 2010); *Lewis v.*

2   *Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). 20 C.F.R. § 404.1513(d). *See also* Social Security

3   Ruling ("SSR") 06-03p, at *5, *available at* 2006 WL 2329939; *Garrison*, 759 F.3d at 1013-14.

4        First, Plaintiff argues the ALJ erred by purporting to find Barbara Scott, ARNP's opinion

5   to be consistent with the RFC finding, while not accounting for Ms. Scott's opinion Plaintiff

6   would have moderate limitations in her ability to respond appropriately to, maintain appropriate

7   behavior in, or tolerate the pressures and expectations of a normal work setting. AR 428-29.

8   However, the ALJ restricted Plaintiff to work needing little or no judgment, work primarily with

9   things rather than people, a work setting which is predictable and with few changes, and found

10  Plaintiff should not deal with the general public other than incidental contact of a superficial

11  nature. AR 802. In other words, the ALJ accounted for Plaintiff's impairments surrounding a

12  normal work setting, and restricted her to simple, discrete tasks with limited coworker and public

13  contact. When an ALJ's RFC finding is more restrictive than, or otherwise accounts for, opined

14  limitations from a medical source, there can be no harmful error. *See Turner v. Comm'r of Soc.*

15  *Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010). *See also Meanel v. Apfel*, 172 F.3d 1111, 1113-14

16  (9th Cir. 2000).

17       Nonetheless, to the extent the ALJ did not account for Ms. Scott's opinion Plaintiff's

18  "mental health conditions are not stabilized enough to engage in meaningful or significant

19  employment at this time," the ALJ erred. Defendant correctly observes this was an opinion as to

20  the ultimate question of disability, however, the ALJ did not offer this reason as a basis for

21  discounting Ms. Scott's opinion. While the ALJ may not be bound by Ms. Scott's opinion, the

22  ALJ could not reject it through silence; the ALJ must present at least a germane reason for doing

23  so. *See Hill*, 698 F.3d at 1160.  The ALJ should reevaluate Ms. Scott's opinion on remand.

24

1   Plaintiff also argues the ALJ erred by failing to offer germane reasons for discounting the

2   opinion of Marfe Paluga, ARNP. The Court agrees. First, the ALJ misstates the findings on

3   mental status examination when he concludes the MSE was "normal" except for fast but not

4   pressured speech. AR 810. Ms. Paluga actually documented depressed and anxious mood and

5   affect, predominance of worries in her thought content, somewhat hyper behavior and attitude,

6   and limited short term memory. AR 780. Second, the ALJ notes Ms. Paluga attached a

7   psychological evaluation from over a year prior to the date of Ms. Paluga's opinion, and

8   concurrent treatment notes indicated the claimant was "relatively stable," despite experiencing

9   bouts of depression. AR 810, 779. However, Ms. Paluga indicates she attached the psychological

10   evaluation to provide Plaintiff's medical and psychosocial history. AR 779. Further, Ms.

11   Paluga's observation Plaintiff was relatively stable but continuing to experience bouts of

12   depression is entirely consistent with her opinion Plaintiff would have inconsistency in her job

13   performance, efficiency, and increased absences due to her inattention, hyperactivity, and

14   depression.  AR 779. Thus, the ALJ's reasons were unsupported by substantial evidence, and the

15   ALJ erred by discounting Ms. Paluga's opinion. The ALJ should reevaulate Ms. Paluga's

16   opinion on remand.

17   **CONCLUSION**

18   Based on the foregoing reasons, the undersigned concludes the ALJ committed harmful

19   error by failing to follow the law of the case. Therefore, the undersigned recommends this matter

20   be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), for further

21   proceedings. On remand, the ALJ should reevaluate the medical opinion evidence and proceed

22   on to Step Four and/or Step Five of the sequential evaluation as appropriate. The ALJ should

23   also develop the record as needed, and revise the residual functional capacity to the extent new

24

1 | evidence warrants such revisions. The undersigned recommends judgment be entered for

2 | Plaintiff and the case closed.

3 |      Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

4 | fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

5 | 6. Failure to file objections will result in a waiver of those objections for purposes of de novo

6 | review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

7 | imposed by Rule 72(b), the clerk is directed to set the matter for consideration on January 20,

8 | 2017, as noted in the caption.

9 |      Dated this 4th day of January, 2017.

David W. Christel
United States Magistrate Judge